Patrick Atkinson against Garland. All right, we seem to have shifted counsel here, so we're ready to go. Mr. Segali. May it please the court, good morning, your honors, my name is David Segal, I'm here on behalf of Patrick Atkinson. The Supreme Court's decision in Bruin has made this a very different case from when Mr. Atkinson's appeal was filed, but also much more linear. Bruin mandates reversal because it abrogated this court's opinion in Canner v. Barr and Hatfield v. Barr, and both were relied upon by the lower court in dismissing Mr. Atkinson's claim. So can I ask you just an opening question? You're certainly right that the Bruin case says history is what we need to look to, but the Bruin case itself goes on for pages and pages and pages, going all the way back to King Ethelbert and so on to examine the relevant history prior to the adoption of the Second Amendment and then insofar as it may shed some light on things afterwards. And I wonder, given the seismic nature of that kind of an idea, whether this case actually really needs a remand to the district court so that both sides can do the same kind of thorough historical investigation that we see in the Bruin case. I mean, I have the sense that we're being asked to do this on the fly, given when Bruin came down in the history of this case. We'll do that if that's what the court wishes. That's certainly better than affirming a 12B6 dismissal. We believe, however, that the history is actually clear that notwithstanding the dicta of other cases, that the history is actually clearer that nonviolent felons were not disarmed at the time of the founding. But that's, I mean, see, so much depends on what the question is. So you think that's the question. Now, certainly in this court's in-bank decision in Scoyon, we said, and I tried to look through the history that you cited and the history that's cited in the amicus brief and the history that was cited in the Bruin case itself. And I can't find any instance in which legislative bodies, whether it was parliament, whether it was towns, cities, states, were told that you cannot identify classes of people who are disabled from holding guns, whether they're people with severe mental disabilities, whether they're people who are not law-abiding citizens as represented by the fact that they're felons. So I was looking for a case that said, no, this really has to be case by case on the question of likelihood of violence. I couldn't find a single one. Well, Judge Wood, I don't think that on its face it is an individual assessment. I think that what the remand that we would certainly accept in this case, and indeed as an alternative we are asking for, is for Mr. Atkinson to have an opportunity to show that he is part of the people, the law-abiding, responsible, non-dangerous people. But that's got to be a case by case evaluation. You argue forcefully that Mr. Atkinson's crime, actually Mr. Atkinson doesn't seem really fully to accept responsibility for this crime, but I'll put that to one side. It was many, many years ago. He's been a law-abiding citizen since then. I accept that on the face of the pleadings. But many, many other people could say the same thing. Many other people could say this was very old, more than 20 years ago, whatever. I hope there are a lot of people who perhaps learned their lesson 20 years ago and have since stayed on the straight and narrow. So I think you are asking for an individualized evaluation of each person to see whether that person has regained the right to hold the same kinds of arms that an otherwise law-abiding person can hold. I agree, Your Honor, that it is sort of a subtle nuance. But when the appeal was filed before Bruin, we were asking for a remand for a hearing to show that Mr. Atkinson has been sufficiently rehabilitated, such as I think would have been contemplated in Section 925C, or the Illinois FOID statute if Mr. Atkinson's crime had been a state crime. He would have long ago been able to appeal to the state police for restoration. Has he sought any kind of executive clemency? I mean, the President, of course, could do something. I am 95% sure the answer to that is yes, he did. But it's not in the record. It's not in the record because I don't believe that it is dispositive of anything. But to further answer Your Honor's question, whereas before Bruin, I was asking for a hearing with regard to the, like I said, the FOID restoration or a 925C hearing, as I believe that was contemplated. Now, post-Bruin, knowing that in the historical record, nonviolent felons either weren't disarmed at all or were disarmed to the, and this is to the extent that they weren't executed. But when they weren't, well, you know, you take what you can get, I suppose. But if they could avoid capital punishment, they either weren't disarmed at all or when their sentences were done, their rights were restored. So now I believe that the question, the inquiry about Mr. Atkinson is does he fit into the nonviolent category? It's less of, again, it's something. I would agree, I take it, that the Supreme Court at least has never reached this question. Heller, McDonald, Bruin all speak of law-abiding citizens. So we're trying to figure out who these people are. Well, the closest I think that, to Your Honor, is Scarborough v. U.S., a 1977 decision that talked about how with the 1938 Federal Firearms Act, the point was to keep guns out of the hands of those who demonstrated that they may not be trusted to possess a firearm without becoming a threat to society and noted that even after the 1961 expansion that the court recognized that the point was still keeping the firearms out of the hands of risky, threatening, and dangerous people. That doesn't shed any light on the constitutional question. I think Judge Wood's framing of the issue before us right now is exactly right, that it really depends on how you frame the question post-Bruin. And there's this threshold issue about whether felons can categorically be dispossessed by virtue of a felony conviction, full stop, regardless of whether it's a conviction for a violent offense or a nonviolent offense, and regardless of whether there's any dangerousness associated with either the offender's crime or his more recent history since committing the crime. So that's the threshold question we're now being told by the Supreme Court, that the only thing that counts is whether there is a historical analog in the nation's legal tradition of firearms regulation measured from the time of the framing with some degree of post-framing legal history, practice, tradition, maybe in the mix, maybe not, depending on how you resolve that question. The history has never been subjected to adversarial testing. It has not been subjected to adversarial testing in this court, in any of our previous cases, not Cantor, not Scoyin, not Hatfield, not Yancey, because we have approached these questions in a different way, as you know. Now we're being told that our approach is wrong, that there is to be no means-end testing, that we cannot at the end of the historical inquiry call a draw if the historical question doesn't resolve the case or if the historical evidence doesn't resolve the case, and we cannot go to a step two means-end testing. It all turns on history. That history has never been subjected to adversarial testing. Can't take refuge in the Supreme Court's dicta about presumptively lawful firearms regulations because the court violated its own rule in saying that. To your point about whether we need a remand, I think we need a straight answer to that question about what would be litigated on remand and how it would be litigated on remand. This is not a fact-finding enterprise in the ordinary sense that would require us to remand to send the case to the district court to actually make a record that we can then review. This is an inquiry into legal history and tradition. It's all law. It's no facts. Why can't that be done here? And that begs the question, why wasn't it done here by either side in the briefs? Your Honor, first of all, Bruin came out before our reply brief. Yes. And I think that actually, and I referenced this in the reply, that the argument in the opening brief, I think Section 4 titled Cantor was wrongly decided, I think covered the historical record and showed that non-dangerous persons were not disarmed permanently at the time of the founding. So I agree. I mean the court has not addressed the question except hinting at it in Cantor when it said that there's scholarly disagreement about the extent to which felons were considered excluded from the right to bear arms during the founding era. The court took that opportunity to leapfrog to Step 2 of the now defunct Step 2 of the Zell analysis, but it's the government's burden to prove that there was a regulation that was historically based. But in fairness, we all agree that Bruin made a very significant change to this analysis. If one has been following the post-Bruin discussion, both in the academy and also in the courts, history isn't that easy to do. And I could imagine if there were remand, people might even be hiring historian experts. Yes, there are laws, but there was a lot of social practice. What did municipalities do? Did they really follow up on it? If you look at some of the discussion of history in Bruin, the opinion of Justice Thomas for the court notes some things that were maybe laws on paper but not really practiced. There's a lot of nuance here that might need exploration. Well, Your Honor, I just want to make sure I've said it. I was going to reserve three minutes for rebuttal. I guess now I'm at two. But I, of course, want to answer the court's question. I agree that when we're going back through history to answer the question, there's going to be subtleties and there's going to be nuances, of course. But, again, it's the government's burden. I believe that we did, through the appellant's briefings and the amicus brief from Mr. Greenlee, Professor Greenlee, on behalf of the Firearms Policy Coalition, I believe that this question, at least on our side of the table, has been addressed. However, I understand what the court is saying. And, like I said, anything at this moment, on behalf of Mr. Atkinson, anything is better than the affirmation of a 12B6 dismissal. And so if the court wants further information in order to flesh this out more, we'll do whatever the court says we have to do. But the bottom line is that Mr. Atkinson isn't a dangerous person and there's no record that people like him were disarmed at the founding. And that one way or another, ultimately, the dismissal of his claim should be reversed and his rights should be restored. I'm going to, unless there's other questions at this moment, I'll hold what I got for rebuttal. That's fine. Thank you. Mr. Soter. Good morning, Your Honors, and may it please the court. Kevin Soter from the Department of Justice for the government. I think it might be helpful to briefly take a step back. We're talking about a longstanding and critical piece of federal gun safety legislation under which individuals convicted of felonies are generally prohibited from possessing firearms. It's not longstanding. Well, the Supreme Court has referred to it as longstanding and has called out- In dicta that is unexplained. So I think it's not longstanding by historical tradition. It's recent. Mr. Soter, let me ask you this question. In light of the dialogue that you just heard against the backdrop of Bruin, has- and I realize the timing here, when Bruin came down and the briefing schedule and all that- has the Department of Justice landed on the position that it's going to take in these cases? And that's part one. And part two, assembled the historical analysis that Bruin requires and submitted it to courts, or is that still all in the works? So, Your Honor, to your first question, I want to be very clear that the Department of Justice's position has been and remains that Section 922G1 is constitutional in all of its applications. The historical record, we think, amply confirms that result that the Supreme Court has already suggested is the answer here and has said is the answer by referring to this exact type of prohibition as constitutional. So the Department's position all the way up, including the Attorney General and the Solicitor General, is embodied in the red brief that was filed here? So, Your Honor, I can't speak to the exact mechanics by which a particular- It just seems to me- People weigh in. I understand the position, and that may well be the position, but it would seem that you would present it in a way that's not embodied in the brief that we received, and that's not a criticism at all. It's just an observation of the timing and the need to file a brief on the schedule that it was due here, but that it would seem that the Department would step back and say, okay, this litigation's going on all over the United States in courts. It's going to work its way to circuit courts. What is our submission on the historical inquiry that the Supreme Court now demands? Well, Your Honor, I think in this case, our submission has been to make a few points that we think are particularly important to keep in mind. One is that the Supreme Court has repeatedly emphasized that the Second Amendment right belongs to law-abiding citizens. That's a descriptive statement, not a prescriptive statement or a statement about the scope of the right. It describes what was going on in each of the cases. I think you're reading it for more than it's worth. We're clearly being told to do a robust historical analysis, to look for historical analog to firearms restrictions post-Bruin, and my question is the same as Judge Scudder's. If what you gave us post-Bruin in the red brief in this case is the totality of the government's position on felon in possession statute for purposes of as-applied challenges, and this case isn't going to get any better on remand, we need to know that and we need a candid answer. If you gave us everything you've got and you're not going to give us any more historical argument, then there's no purpose for a remand. Do you want the opportunity to do a better job on the history and not rely on the presumptively lawful firearms dicta, firearms regulation dicta? Your Honor, I'd like to clarify that we are relying on several things, including the history as an initial matter, which we do think that we have shown and other courts have adopted. The rule that would resolve this case based on the history. Before Bruin. There is no court of appeals decision after Bruin. The courts of appeals that have applied a text and history-based approach, however, that had a two-step framework resolved this at step one, and in particular I would point to the D.C. Circuit's decision in Medina v. Whitaker, which held in, it only took that court sort of a few paragraphs to go through how the history supports a felon possession ban, particularly as applied to fraud offenders, and we think that that analysis remains fully in force after Bruin. You don't want another opportunity to develop a better historical record to subject it to adversarial testing in this case. Your Honor, we think that— Or rely on the limited adversarial testing for the historical claim that has gone on before Bruin. Your Honor, that historical record is compiled in the existing briefing, of course, if the court believes that further material on these legal questions is necessary, we would welcome an opportunity to address that. My question is, is it going to get any better? Are you going to do the historical research yourself and give it to us, or are you just going to point to that D.C. Circuit case and the multiple opinions in the Binderup case and so forth, or are you going to actually take what Bruin says seriously? Your Honor, taking what Bruin says seriously, I think, shows that the history supports a ban on firearm possession by Trump. Obviously, there's history in history, as the Bruin opinion shows, and I thought I just heard you say that if this court thinks that the history discussed in your brief isn't enough, you're willing to go back to the drawing board and fill it in more completely and show what I was asking, are there any instances in which cases in the past or the history on which the 1791 drafters of the Second Amendment were looking at that shows that categorical exclusions are not okay? Is there a necessary historical analog that shows you always have to have an as-applied safety valve, for example? You can break the questions down, in other words, into much more specific points, and you're not going to find something you're not looking for, but if you do realize that the Bruin approach requires this deep and very granular dive into history, you're telling me you'd be prepared to do it. Yes, Your Honor, I think that the important takeaway is that we think the history is very clear on this point and already establishes for the reasons we've explained. I understand you say that, but we're sort of playing around with the backup position here. Mr. Soto, the other thing that I think that my colleagues have this right, that the layering and the nuance within the layers of these issues is pretty staggering, so one of the things that I'll just speak for myself that I would really benefit from, you're not going to like the premise, but if you're wrong on your main substantive position, I think the judiciary would benefit immensely, and this court would, on what then? If there's no categorical exclusion and the limitation is on nonviolent felonies or lines drawn around violent nonviolence, how do you measure that? Are we looking just at the nature of the conviction? Are we getting into facts? Are we into the Second Amendment equivalent of the categorical and modified categorical approach? What does history tell us about all of those things? Because we can't make the decisions ourselves. We have to make the decisions based on some version of history. You could come up with a lot more examples than I can, I'm certain, but I think there's a lot of nonviolent felony convictions that one could be convicted of that would entail some violence in, at least as we think about relevant conduct. So take money laundering where there's a gun enhancement or obstruction of justice for threatening to kill a witness. We could sit here all day and list examples like that. So I don't know. I would benefit from how do you approach the measurement of this, informed, of course, as Judge Woods emphasized, by the historical record. Your Honor, I think that courts have appropriately recognized in all of the cases that have been decided about Section 922G1 that a class-by-class sort of categorical exclusion is appropriate, including this court in its Scoyan decision. Well, yeah, but, okay, the Supreme Court has reset the table, right, and it now needs to be litigated anew under that framework. I totally understand the substantive position that you have to advance in the courtroom here. All I'm asking you to do is stand in our shoes for a second and realize what the Supreme Court has put in front of lower federal courts, and it is a daunting exercise that is multilayered that gets increasingly complex and perhaps uncertain as you move through those layers. And, Your Honor, I think that's why it's important to take the Supreme Court at their word on the types of prohibitions that are permissible under their Second Amendment jurisprudence. And I think in particular footnote 9 of Bruin helps illustrate that in explaining why a shall-issue licensing regime is appropriate. The court said the reason it's appropriate is that it helps ensure that arms are only, in fact, available to the law-abiding citizenry and that only the law-abiding citizenry can overcome. I don't think you can sign us up for just a broad endorsement of the presumptive validity language in Heller and McDonald after Bruin. I mean, good luck, but I'm not signing on to that. Or even the presumptive permissive language in Bruin itself, which contradicts its own rule. Well, but, you know, to be clear, nothing in our analysis should be interpreted, et cetera, and then on it goes, are, in fact, law-abiding. But whatever law – see, the problem is that just kicks the can down the road a little bit. Who is law-abiding? You know, Mr. Atkinson says, I'm a law-abiding person. You know, I've behaved myself for the last 20, 25 years, and the government's position, the 922G position, is that you can't be seen as law-abiding if you have a prior felony in your rap sheet and it really doesn't matter how long. And you cited us recidivism statistics that would suggest that having that felony in your rap sheet maybe does make you worse than the ordinary citizen. So there are a lot of sub-questions in here. Yes, Your Honor. And I think there are, of course, many questions to be resolved about the scope of the Second Amendment in light of the Supreme Court's decision in Bruin. I think the reason that we do not think this is a particularly complicated case and why we think the D.C. Circuit got it right and the Fourth Circuit got it right and the Third Circuit in discussing the felony background got it right in its Velashtar decision is that there is strong historical support for disarming felons. See, that's where the history needs to be more granular. Whether the felony was one that we would today call a violent felony, murder, let's say, or whether the felony was nonviolent, defrauding old people out of their savings accounts, using the Internet to do it or something like that. Yes, and I think that's the precise issue that was presented to those courts of appeals that I was talking about that decided the historical record supports a ban on, once someone has committed a felony, violent or nonviolent, a legislature is permitted to determine that that person just cannot be trusted with a firearm and the Constitution does not afford someone a right to come into court and get sort of a hyper-individualized assessment that would raise all of the sorts of administrability and workability problems that don't have a historical foundation and that would get into the same types of definitional problems. None of those cases cited a historical analog at the founding. That's what we're being told we need to find in order to sustain firearms regulations post-ruin. The analysis that was done in those cases was completely different and is, in the background, retired. Now we have to start over. This is new. I would have expected some new historical excavation. I accept that you had to file a brief on the court's schedule, and you did, and you're telling us that this is the government's position in all of these cases, and you're standing by it and not accepting that perhaps more needs to be done post-ruin. If that's the government's position, that's fine. Then we make a decision about whether you have carried your burden here because now it's clearly the government's burden to come forward with the historical support for this particular firearms regulation, and if you fail to do so, you lose, he wins. End of story. That's where we find ourselves. I'd like to be very clear. I think we explained why we think that an affirmance would be entirely appropriate here. We did it by reference to those other cases that did the analysis differently. Now we're in new territory. No other constitutional right is treated this way. The Second Amendment has gone from a second-class right to a supercharged right. Every other enumerated constitutional right is subjected to means and testing. So we have to come up with a decision approach, a decision method for evaluating these claims, and neither side helped us very much, I have to say, speaking for myself. Well, I do want to make sure to highlight the points that we think are relevant historical analogs while also making clear that if the court does not think there is enough in the current briefing, of course it should not take the drastic step and unprecedented step. It wouldn't be drastic and unprecedented to say that in this as-applied challenge in which the government bears the burden of demonstrating and establishing that 922G is consistent, G1 is consistent with the nation's legal history and tradition by reference to a historical analog at the time of the founding. If you fail to do that in this round, you lose under the standard traditional burdens in litigation. For this plaintiff, not for all, but for this plaintiff, it's an as-applied challenge. But I think opening the floodgates where no court has gone before to say that a federal felony cannot serve as a proper basis for dishonesty. It's an as-applied challenge good for this plaintiff only. I really respectfully do not think that that would work, Your Honor. I think that would sort of open. This is one of the core pieces of gun safety legislation that has been repeatedly referenced as well. So if this court were to say the government has failed to meet its burden in this case post-Bruin, Mr. Atkinson is entitled to a declaration that's effective for him only. Mr. Soter, can I ask you one? Can we take away from this? You've got a tough message to deliver here today standing on your brief, and you've done it, is what it is. But can we ask you that if the court remands and enters a briefing order articulating what we understand the requisite inquiry now needs to entail after Bruin, that you will take that back to the department and embark upon responding to that briefing order and proceeding in the district court in good faith and after consulting with the powers that be and what have you? Of course, Your Honor. Okay. And I just think it's important to keep in mind what the sources are that we've talked about. And I didn't have a chance to address them in detail, but I think the D.C. Circuit and the Third Circuit and Fallajtar, D.C. Circuit and Medina did an excellent job of going through those sources and showing why they show historical analogs for dispossession of felons, violent and nonviolent. They include capital punishment at the founding. They include precursors to the Second Amendment. And they include colonial era laws that were not limited to people who committed violent crimes. All right. Thank you. Mr. Siegel, you have a little bit of time left. Well, I'd like to use this little bit of time talking quickly to give a quote and a couple, I think, key examples. The best historical support for a legislative power to permanently dispossess all felons would be founding era laws explicitly imposing or explicitly authorizing the legislature to impose such a ban. But scholars and judges thus far have not been able to identify any such laws. That is then Judge Barrett in the Cantor dissent, as cited also in the Greenlee 2020 University of Wyoming article. As an example, 1786, Massachusetts. If a tax collector stole tax money, he could have his property sold off, even imprisoned. But his firearm was specifically exempt from seizure and sale. If a sheriff stole the estate money from that, his property could be sold off to pay the debt. Can I ask you, though? I mean, you have these examples. What is a court supposed to do post-Bruin if the historical record is mixed? If some jurisdictions did put the felon to death and therefore deprive him of his firearms, or in other ways allow the seizure of firearms, and other jurisdictions, as you're citing, maybe did not, what do we do with the mixed record? I believe the court has to waive the records using the example of Bruin, where Justice Thomas noted that one or two outlying examples are not going to… What if it's 60-40? I mean, he characterizes a few examples from the West as outliers and therefore not undermining the general sense that he takes from the history. But history is full of things. You could wind up pretty evenly balanced. Your Honor, I think that that is going to be quite a task for the court. Sounds like a good thing to think about and brief on remand. I just don't think it exists. And again, we certainly will if that's what the court wishes. I don't think it's anywhere near a close call as in this case. And it's hard for me, of course, to answer about a hypothetical case where that kind of split might exist.  Unless the court has any other questions, thank you very much for hearing me today. Thank you. Our thanks to all counsel. The case is taken under advisement.